# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| SONYA MOODY RITCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:20-cv-02067-SGC |
| | ) |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Sonya Moody Ritch, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Ritch timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

## I. Background Facts and Procedural History

Ritch, who has past work experience as a property manager, office manager, and collections clerk, was about 44 years old at the time of her alleged disability onset. (Tr. at 27-28, 173, 216-24). She began experiencing problems with her vision in September 2014. (Tr. at 283). Ritch was diagnosed with diabetic retinopathy and retinal detachment, and she has had multiple surgeries for vision in her right eye. (Tr. 289, 436, 438, 434). In August 2018, Ritch had a pre-retinal hemorrhage in her left eye, and in January 2019, she underwent surgery because of blood in her vision in her left eye. (Tr. 432).

In her disability report, Ritch alleged that she cannot work because she suffers from liver problems, stage 2 cirrhosis of the liver, and diabetic retinopathy. (Tr. at 202). At the hearing before the administrative law judge ("ALJ"), Ritch testified that she suffers from daily headaches and vision floaters. (Tr. at 50). According to Ritch, she does not drive because she has no peripheral vision on the right side and she does not judge distances well. (Tr. at 50). She also suffers from nausea because of the liver cirrhosis. (Tr. at 54).

Ritch applied for DIB in July 2019, alleging she became disabled on October 31, 2018,[3] due to liver problems, cirrhosis, and diabetic retinopathy. (Tr. at 173,

---

[3] Because she received unemployment benefits in 2019, Ritch amended her onset date to August 24, 2019. (Tr. at 45).

202). Her claim was denied, and she requested a hearing before an ALJ. (Tr. at 104). Following a May 2020 hearing, the ALJ denied Ritch's claim. (Tr. at 15-29). The Appeals Council denied review of the ALJ's decision (Tr. at 1-3), and that decision became the final decision of the Commissioner. *See Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Ritch filed this action. (Doc. 1).

## II.    Statutory and Regulatory Framework, and the ALJ's Evaluation

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ found Ritch met the SSA's insured status requirements through December 31, 2023. (Tr. at 20). She further determined Ritch did not engage in substantial gainful activity following the amended alleged onset date of August 24, 2019. (Tr. at 20).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Ritch had the following severe impairments through her date last insured: diabetes mellitus, type II; diabetic retinopathy; cirrhosis; and obesity. (Tr. at 21).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment

or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Ritch does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 21).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

If the claimant is not capable of performing her past relevant work, the Commissioner will determine whether the claimant can perform other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant can perform other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of

performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

Before proceeding to the fourth step, the ALJ found Ritch's impairments could reasonably be expected to cause her alleged symptoms, but Ritch's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 22). The ALJ determined Ritch had the following RFC through December 2023, her date last insured:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps and stairs, but never climb ropes, ladders, and scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to hot and cold temperature extremes. She should never be exposed to hazards such as unprotected heights. She would be limited to occupations which would not require fine depth perception, the nighttime operation of a motor vehicle or full peripheral vision with the right eye. She would need to take a usual 15-minute break after two hours, 30-minute break for lunch, and a second 15-minute break after lunch sufficient to complete an 8-hour workday.

(Tr. at 21-22). At the fourth step, the ALJ concluded Ritch was able to perform past relevant work and ultimately found she was not disabled. (Tr. at 27-28).

### III.   Standard of Review

A court's role in reviewing claims brought under the Social Security Act is narrow. Its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether

the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## IV.     Analysis

Ritch challenges the ALJ's decision on a single ground: the ALJ did not give substantial or considerable weight to the opinion of Ritch's treating physician, Dr. Stanley Morrow. (Doc. 14 at 1). Dr. Morrow opined that Ritch's medical conditions would cause her to miss 6-10 days of work each month. (Tr. at 609). That level of absenteeism would preclude Ritch from performing or maintaining competitive employment (Tr. at 57). In response, the Commissioner notes the "treating source rule" does not apply to Ritch's application because she applied for benefits after March 27, 2017. (Doc. 15 at 6-7). Specifically, the new regulations provide that an ALJ need not "defer or give any specific evidentiary weight, including controlling

7

weight, to any medical opinion(s). . ., including those from [the claimant's own] medical sources." *See* 20 C.F.R. § 404.1520c(a).

### A. Legal Framework

Under the new regulations, an ALJ should evaluate the persuasiveness of an opinion by considering whether that opinion is consistent and supportable. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions will be." 20 C.F.R. § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). While she is not required to do so, the ALJ may explain how she considered other factors, such as the medical source's relationship with the claimant and specialization, when considering the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2).

### B. Dr. Morrow's Opinion Evidence

Dr. Morrow is Ritch's primary care physician who, as of May 2020, had treated Ritch over a period of about three years. (Tr. at 589, 603). He described Ritch's medical conditions as "quite complicated." (Tr. at 603). Ritch's diabetic retinopathy significantly affected her vision, and according to Dr. Morrow, she may eventually be blind from progressive scarring and bleeding from behind her eyes.

(Tr. at 604). Ritch has had retinal detachment, and she has also had laser surgery to stop the bleeding behind her eyes. (Tr. at 604). Dr. Morrow testified that people with visual changes overcompensate for their visual problems by straining and staring harder to see, and this can result in daily tension or muscle spasm headaches. (Tr. at 604). He also testified that Ritch complained to him and his CRNP about dizziness and a lack of depth perception and peripheral vision, which makes it hard for Ritch to drive. (Tr. at 605). When asked about Ritch's complaints of sharp pain and nausea, Dr. Morrow confirmed those are common symptoms of cirrhosis. (Tr. at 608).

Dr. Morrow asserted Ritch was a viable candidate for DIB because she could not work a full-time job. (Tr. at 610). According to Dr. Morrow, Ritch would miss six to ten days of work each month because of her impairments. (Tr. at 609).

The ALJ found Dr. Morrow's opinion was not persuasive because it was not consistent with or supported by medical evidence of record. (Tr. at 27). The ALJ found four other medical opinions either persuasive or mostly persuasive, but none of those opinions suggested Ritch would require so much time off work each month. (Tr. at 26-27). Also, while Ritch had been treated by Dr. Morrow's practice eleven times between April 2017 and February 2020, Dr. Morrow examined Ritch only three times; Ritch usually saw the CRNP. (Tr. at 27). The CRNP's notes reflected Ritch should remain out of work for a total of 5 weeks in 2018, but there was no

other mention in the contemporaneous medical records that Ritch would need additional time off work. (Tr. at 27).

The ALJ applied the correct legal standard in evaluating the persuasiveness of Dr. Morrow's opinion by examining whether it was supportable and consistent. First, the ALJ noted that Dr. Morrow did not support his opinion with objective medical evidence. (Tr. at 27). While Dr. Morrow testified that Ritch complained to him of headaches and nausea, his treatment notes do not reflect those complaints. Ritch made eleven visits to Dr. Morrow's practice between April 2017 and February 2020, but she complained of nausea only once—in November 2018. (Tr. at 383). Ritch complained of decreased vision and an inability to drive in February 2020 and fuzzy vision in January 2019; however, Dr. Morrow's records do not reference any complaints of headaches. (Tr. 373-406). Significantly, Dr. Morrow's treatment notes consist largely of a form listing various potential symptoms; "headaches" is not circled in any of Dr. Morrow's treatment records—whether signed by him or his CRNP. (Tr. 373-406).

Ritch asserts the record contains "ample evidence" that she suffers from diabetes, diabetic retinopathy, and cirrhosis and that those impairments cause her reported dizziness, nausea, lack of peripheral vision, blurred vision, and "frequent debilitating headaches." (Doc. 14 at 11). There is no question the record demonstrates Ritch suffers from diabetes, diabetic retinopathy, and cirrhosis; the

ALJ found both that Ritch suffered from these ailments and that they are "severe impairments" that impact her ability to work. (Tr. at 21). The ALJ also found these impairments could be reasonably expected to cause her symptoms but that the medical evidence did not support a finding her symptoms wholly preclude her from working: "the combination of impairments, which result in some limitation, [] do not prevent the claimant from performing a limited range of light work." (Tr. at 27).

Additionally, Ritch does not point to any specific record evidence to support her claim of "ample evidence" that her medical diagnoses cause symptoms that would render her unable to work. As stated above, Dr. Morrow's treatment notes contain only a single mention of nausea and no mention of headaches. (Tr. at 383). A review of the record shows the following references to headaches and nausea at other medical providers:

- On April 18, 2017, Ritch visited Retina Specialists of Alabama, LLC, where she reported she hit her head on a cabinet and it immediately affected the vision in her right eye. (Tr. at 429). She also reported a headache. (Tr. at 429).

- On July 11, 2018, Ritch visited the Hamilton Vision & EyeCare Clinic, where she reported red in her vision and headaches. (Tr. at 302).

- On July 12, 2018, she visited Retina Specialist of Alabama, LLC for a follow-up/post-op visit. She reported "some severe headaches." (Tr. at 423).

- On November 5, 2018, Ritch visited the Eliza Coffee Memorial Hospital for a consult for abdominal pain and pancreatitis. She reported mild pain but no significant nausea. (Tr. at 331). Other records from that date indicate she reported worsening pain and some nausea. (Tr. at 344).

11

- On January 31, 2019, she visited Retina Specialists of Alabama, LLC for a post-op check, where she reported a "tiny headache." (Tr. at 411). About two weeks later at another post-op check, she reported no headache and improved vision. (Tr. at 409).

- In September 2019, Ritch visited After Hours Clinic (Sumiton) for a disability physical, and, among other issues, she reported associated chronic headaches related to vision loss and diabetes. (Tr. at 461).

Consistent with the ALJ's conclusion, these records reflect Ritch occasionally complained of these symptoms, but they do not support Dr. Morrow's assertion that these issues would require Ritch to take multiple days off work each month. Accordingly, substantial evidence supports the ALJ's determination that Ritch was able to perform past relevant work, and the ALJ did not err in discounting Dr. Morrow's opinion as unsupported by the medical evidence of record.

Ritch also argues that Dr. Morrow's treatment notes should not be considered inconsistent with his testimony about absenteeism. According to Ritch, Dr. Morrow's notes did not reference time off work because Ritch stopped working in October 2018. (Doc. 14 at 12). This might be a fair point; however, the treatment notes from Dr. Morrow's practice that do reference a need for time off work occur from November 2018 to January 2019—all after Ritch stopped working in October 2018. (Tr. at 551, 554, 557).

Finally, Ritch complains the ALJ discounted Dr. Morrow's opinion based on his short treating relationship with Ritch but she did not apply the same criticism to other medical opinions. First, Dr. Morrow was the only medical source who claimed

to have a lengthy treating relationship with Ritch. He stated he had treated Ritch anywhere from 15 to 20 times. (Tr. at 608). But, as the ALJ noted, the record shows only three separate occasions where Dr. Morrow examined Ritch. (Tr. at 27). Second, a medical source's relationship with a claimant is only one factor that an ALJ should consider. *See* 20 C.F.R. § 404.1520c(c)(3). While an ALJ must explain how she considered the supportability and consistency factors, she is not required to explain how she considered the relationship factor. *See* 20 C.F.R. § 404.1520c(b)(2). In any event, this court does not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *See Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011). "Even if the evidence preponderates against the Commissioner's findings, [this court] must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158–59. The ALJ explained she found the opinions of Drs. Gloria Sellman, Thomas McKinnon, Victoria Hogan, and James Kelly either persuasive or mostly persuasive because of the consistency and supportability factors. Therefore, she did not err in failing to explain how she considered the relationship factor with each of these physicians.

## V.   CONCLUSION

Upon review of the administrative record and considering all of Ritch's arguments, the court finds the Commissioner's decision is supported by substantial

evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 13th day of September, 2022.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE